UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

ANDREW VENTRE,
     Plaintiff,

     v.                                   CIVIL ACTION NO.
                                          11-40205-TSH
PETER FORGUES, JUAN COLON
and HARVEY VACHON,
     Defendants.


                    REPORT AND RECOMMENDATION RE:
        DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
                         (DOCKET ENTRY # 17)

                         January 16, 2013

**BOWLER, U.S.M.J.**

   Plaintiff Andrew Ventre ("plaintiff"), proceeding pro se, seeks compensatory and punitive damages as well as declaratory and injunctive relief for alleged violations of his federal constitutional rights under 42 U.S.C. § 1983 ("section 1983"). He also alleges violations of a number of other federal and state laws.  The alleged violations took place during his confinement at the North Central Correctional Institution ("NCCI") in Gardner, Massachusetts.  (Docket Entry # 1).

   Pending before this court is a motion to dismiss filed by defendants Peter Forgues ("Forgues"), Juan Colon ("Colon") and Harvey Vachon ("Vachon") (collectively "defendants").  (Docket Entry # 17).  Plaintiff filed an opposition (Docket Entry # 19) and the motion is therefore ripe for review.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court must accept all factual allegations in the complaint as true and "draw all *reasonable* inferences in favor of the plaintiff." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007) (emphasis in original). Moreover, the allegations in a complaint filed by a pro se plaintiff are held "'to less stringent standards than formal pleadings drafted by lawyers.'" Hughes v. Rowe, 449 U.S. 5, 9 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

Despite a liberal reading of the complaint, a plaintiff must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to survive a Rule 12(b)(6) motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). It is not enough to merely allege that a defendant acted unlawfully; a plaintiff must state a claim "that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged[,]but it has not 'show[n][,] that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. at 679.

BACKGROUND

Plaintiff is an inmate committed to the custody of the Massachusetts Department of Corrections ("DOC") at NCCI. Defendants were correctional officers at NCCI during the relevant time period alleged in the complaint. (Docket Entry # 1, ¶¶ 3-6).

On or around July 2010, plaintiff was working in the kitchen at NCCI when Forgues gave a "head tilt" to plaintiff, suggesting that plaintiff come into the correctional officers' private bathroom. (Docket Entry # 1, ¶ 8). Plaintiff told Forgues that, "[I'm] not into that" and left the area. (Docket Entry # 1, ¶ 10).

Approximately two days after the kitchen incident, plaintiff discussed his concerns about Forgues' impropriety with Vachon. (Docket Entry # 1, ¶¶ 11-15). Vachon requested that plaintiff inform him if plaintiff saw or heard anything else regarding Forgues. (Docket Entry # 1, ¶¶ 16-18).

Plaintiff continued working in the kitchen but Forgues "acted differently" towards plaintiff. (Docket Entry # 1, ¶ 19). Forgues told other prisoners that plaintiff was stealing. Forgues also made "ignorant jokes" and constantly played with his pant's zipper. (Docket Entry # 1, ¶¶ 20-21). Another inmate told plaintiff that Forgues looked at plaintiff's rear in a suggestive manner. (Docket Entry # 1, ¶ 23). Soon

3

thereafter, Forgues placed plaintiff and another inmate on leave from working the kitchen due to an investigation of "Home Brew" found in the common area of the bakery. (Docket Entry # 1, ¶ 24).

Plaintiff summarized his conversation with Vachon and detailed the initial kitchen incident with Forgues to Colon. Colon said he would keep the conversation confidential. (Docket Entry # 1, ¶¶ 25-29). After a number of other correctional officers asked plaintiff about the investigation of Forgues, plaintiff concluded that Colon broke his promise of confidentiality. (Docket Entry # 1, ¶¶ 29-30). Thereafter, Forgues made daily comments to plaintiff that he was "not going anywhere." (Docket Entry # 1, ¶ 32). Plaintiff was later found not responsible in the "Home Brew" investigation but has not been reinstated to work in the kitchen. (Docket Entry # 1, ¶ 34).

The eight count complaint sets forth the following claims: (1) violation of due process under the Fourteenth Amendment (Count I); (2) violation of equal protection under the Fourteenth Amendment (Count II); (3) violation of civil rights under section 1983, 42 U.S.C. § 1981 ("section 1981"), 42 U.S.C. § 1985 ("section 1985") and the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. L. ch. 12, § 11I (Count III); (4) intentional infliction of emotional distress ("IIED") (Count

4

IV); (5) violation of DOC regulations (Count V);[1] (6) violation of the Massachusetts Administrative Procedure Act, Mass. Gen. L. ch. 30A (Count VI); (7) violation of the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. §§ 15601 et. seq. (Count VII); and (8) violation of various other laws (Count VIII).  (Docket Entry # 1).

## DISCUSSION

Defendants move to dismiss the complaint for failure to state a claim for relief because:  (1) plaintiff fails to allege any facts to support a claim under sections 1981, 1983 or 1985; (2) there is no liberty or property interest in prison employment to implicate a due process claim; (3) plaintiff fails to allege any facts for an equal protection claim; (4) plaintiff fails to allege any intimidation, threat or coercion for the MCRA claim; (5) there is no private cause of action under the PREA statute; and (6) the cited DOC policies are not binding regulations and do not fall under the Massachusetts Administrative Procedure Act.  (Docket Entry # 18).[2]  These

---

[1] Plaintiff specifically references defendants' failure to follow 103 DOC 100, 103 DOC 407, 103 DOC 519 and 103 DOC 520. (Docket Entry # 1, ¶¶ 50-52).

[2] Defendants also argue qualified immunity (Docket Entry # 18, p. 16), but this defense is not reached because the applicable claims do not withstand the motion to dismiss on the merits.

arguments are addressed seriatim with respect to counts I, II and III and the federal and state constitutional claims therein.

I.  <u>Sections 1981, 1983 and 1985</u>

Plaintiff alleges defendants violated his civil rights under sections 1981, 1983 and 1985.  He fails, however, to provide any facts to support these claims.  (Docket Entry # 1).  Each statute has essential elements that must be properly pleaded beyond the conclusory allegation of the violation itself.

Under section 1981, "a plaintiff must show (1) that he is a member of a racial minority, (2) that the defendant discriminated against him on the basis of race, and (3) that the discrimination implicated one or more of the activities enumerated in the statute."  <u>Garrett v. Tandy Corp.</u>, 295 F.3d 94, 98 (1st Cir. 2002) (citing <u>Morris v. Dillard Dep't Stores, Inc.</u>, 277 F.3d 743, 751 (5th Cir. 2001); <u>accord</u> <u>Odunukwe v. Bank of America</u>, 2009 WL 1875324, at *3 (1st Cir. July 1, 2009).  A pleading is insufficient if it fails to mention race whatsoever for a section 1981 claim.  <u>See</u> <u>Faust v. Cabral</u>, 2011 WL 4529374, at *3 n.2 (D.Mass. Sept. 27, 2011).

There are two essential elements to a section 1983 action: "'(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United

6

States.'" Grajales v. Puerto Rico Ports Authority, 682 F.3d 40, 46 (1st Cir. 2012) (quoting Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995)). "Section 1983 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'" Felton v. Lincoln, 429 F.Supp.2d 226, 238 (D.Mass. 2006) (internal citations omitted).

Under section 1985, a "plaintiff must allege a conspiracy motivated by a racial or otherwise class-based invidiously discriminatory animus." Canney v. City of Chelsea, 925 F.Supp. 58, 68 (D.Mass. 1996) (citing Griffin v Breckenridge, 403 U.S. 88, 102 (1971)). There must be "a *bona fide* factual basis for conspiracy claims" under section 1985. Connor v. Massachusetts Commission Against Discrimination, 2012 WL 3686182, at *2 (D.Mass. Aug. 15, 2012) (emphasis in original).

In the case at hand, plaintiff simply states his conclusion that defendants violated sections 1981, 1983 and 1985. (Docket Entry # 1, ¶¶ 41-43). There is no mention of race and no allegation that inferentially suggests any defendant conspired or intended to deprive plaintiff of any constitutional right. Plaintiff fails to set forth any factual theory to assert a claim under sections 1981, 1983 or 1985.

II. Due Process Claim

Liberally construing the due process claim, plaintiff alleges that defendants deprived plaintiff of a protected

liberty or property interest in his assignment to the kitchen position without due process of law.  Analysis of a due process claim requires two steps:  "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."  Swarthout v. Cooke, 131 S.Ct. 859, 861, reh'g denied, 131 S.Ct. 1845 (2011) (citing Kentucky Dep't of Correction v. Thompson, 490 U.S. 454, 460 (1989)).

   A state may vest prisoners with protected liberty or property interests under the Due Process clause through its statutes or regulations.  Wolf v. McDonnell, 418 U.S. 539, 555-56 (1974); Johnson v. California, 543 U.S. 499, 529 (2005); Cryer v. Spencer, 2012 WL 892883, at *4 (D.Mass. Mar. 15, 2012).  "[U]nless state laws or regulations are to the contrary, prisoners have no vested property or liberty rights to either obtain or maintain prison jobs."  Dupont v. Saunders, 800 F.2d 8, 10 (1st Cir. 1986); accord Thath Sin v. Massachusetts Dep't. of Correction, 2012 WL 1570810, at *5 (D.Mass. May 2, 2012).

   Here, plaintiff fails the first step of the Swarthout analysis because there is no protected liberty or property right to work in prison.  The state statute that authorizes the Massachusetts Commissioner of Correction ("Commissioner") to establish and maintain programs does not create any entitlement

to prison employment. Mass. Gen. L. ch. 127, § 48;[3] see Jackson v. Russo, 495 F.Supp.2d 225, 229-30 (D.Mass. 2007) (Commissioner has complete discretion over employment programs). As defendants correctly note in their memorandum (Docket Entry # 18, p. 6), programs and employment under the statute are within the discretion of the Commissioner. See Commonwealth v. Langton, 518 N.E.2d 534, 535 (Mass.App.Ct. 1988) (statute was revised to make work eligibility discretionary with the Commissioner).

Plaintiff relies on Sandin v. Conner, 515 U.S. 472 (1995), and appropriately notes that protection under the Due Process clause arises when state action "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. at 484 (internal citations omitted). Nonetheless, plaintiff again fails to relate any facts to support the proposition. Prison programs and employment are discretionary opportunities and

---

[3] Section 48 of Massachusetts General Law chapter 127, provides in pertinent part:

> The commissioner shall establish and maintain education, training and employment programs for persons committed to the custody of the department . . . Such programs shall include opportunities for academic education, vocational education, vocational training, other related prevocational programs and employment, and may be made available within correctional facilities . . ..

"plaintiff cannot argue that he has 'legitimate entitlement' to such opportunities or that the lack of such opportunities creates 'an atypical and significant hardship.'" Hernandez v. Gonzalez, 1996 WL 377148, at *2 (D.P.R. June 28, 1996) (quoting Abdul-Akbar v. Dep't. of Correction, 910 F.Supp. 986, 1003 (D.Del. 1995)). Similarly, the First Circuit's application of Sandin in a case about revocation of a prisoner's work release program after four years of participation "did not affect any state-created liberty interest" in violation of the Due Process clause. Dominique v. Weld, 73 F.3d 1156, 1161 (1st Cir. 1996); see also Martin v. Clavin, 2010 WL 3607079, at *3 (D.Mass. Sept. 9, 2010) (due process claim fails because prison work assignments are not recognized liberty or property interests); Shabazz v. Cole, 69 F.Supp.2d 177, 189-90 (D.Mass. 1999) (revocation of prison law library privileges "falls well below the kind of atypical and significant hardship" necessary to invoke the Due Process clause).

III. Equal Protection Claim

Defendants next maintain that because plaintiff fails to allege how he is being deprived of equal protection under the Fourteenth Amendment (Docket Entry # 1, ¶¶ 38-39), there is no claim. (Docket Entry 18, p. 7). Plaintiff must show that he "was treated differently from 'others similarly situated . . . based on impermissible considerations such as race, religion,

intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Clark v. Boscher, 514 F.3d 107, 114 (1st Cir. 2008) (quoting Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 57 (1st Cir. 2006)). Furthermore, prisoners are not a suspect class such that it would warrant heightened scrutiny. Boivin v. Black, 225 F.3d 36, 42 (1st Cir. 2000) (summarily stating that prisoners are not a suspect class and do not justify heightened scrutiny on that basis); Webber v. Crabtree, 158 F.3d 460, 461 (9th Cir. 1998) (per curiam) (prisoners are not a suspect class); Zehner v. Trigg, 133 F.3d 459, 463 (7th Cir. 1997) (idea that prisoners constitute suspect class is "completely unsupported"). Even with a liberal reading of the pro se complaint, there is no factual basis for the equal protection claim. See Restucci v. Clarke, 669 F.Supp.2d 150, 155 (D.Mass. 2009) (court "will not 'conjure up unpled allegations' . . . to state an actionable claim") (internal citations omitted).

IV. MCRA Claim

To establish a claim under the MCRA, plaintiff must sufficiently allege "that his exercise or enjoyment of rights secured by the constitution or laws of either the United States or Massachusetts has been interfered with, or attempted to be interfered with, by threats, intimidation or coercion." Morrissey v. Town of Agawam, 2012 WL 2979075, at *10 (D.Mass.

11

July 12, 2012). Although the MCRA is a state "counterpart" to a section 1983 claim, an MCRA claim must additionally "show that the derogation of rights occurred 'by threats, intimidation or coercion.'" Morrissey v. Town of Agawam, 2012 WL 2979075, at *10 (quoting Bally v. Northeastern Univ., 532 N.E.2d 49, 52 (Mass. 1989)). The element of "threats, intimidation, or coercion" is essential.[4] Parks v. Town of Leicester, 2011 WL 864823, at *5 (D.Mass. March 9, 2011). Massachusetts Supreme Judicial Court cases hold that MCRA violations include actual or potential physical confrontation involving threat of harm. See Planned Parenthood League of Massachusetts, Inc. v. Blake, 631 N.E.2d 985, 989 n.8 (Mass. 1994); Noel v. Town of Plymouth, 895 F.Supp. 346, 355 (D.Mass. 1995). Plaintiff's allegation that defendants violated the MCRA is conclusory and is not supported by any facts. (Docket Entry # 1, ¶ 42). There are no allegations that any defendant subjected plaintiff to actual or

---

[4] The meaning of "threat, intimidation or coercion" under the MCRA is discussed in Morrissey v. Town of Agawam as follows:

> A "threat" means the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. "Intimidation" means putting a person in fear for the purpose of compelling or deterring his or her conduct. "Coercion" means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do.

Morrissey v. Town of Agawam, 2012 WL 2979075, at *10 (internal quotations and citation omitted).

potential harm through threats, intimidation or coercion as required by the MCRA.[5]

V. <u>The PREA Claim</u>

Plaintiff submits a claim under the PREA. "[E]very court to address the issue" has held that the PREA does not allow a private cause of action. <u>Chao v. Ballista</u>, 772 F.Supp.2d 337, 341 n.2 (D.Mass. 2011) (internal citations omitted). The PREA is merely a record of congressional finding and does not create a private right of action. <u>Rasheed v. D'Antonio</u>, 2011 WL 4382097, at *19 (D.Mass. Aug. 1, 2011).

VI. <u>DOC Policy Violations and Massachusetts Administrative Procedure Act</u>

Plaintiff alleges that defendants failed to follow DOC policies[6] and such policies have the force of law under the Massachusetts Administrative Procedure Act, Mass. Gen. L. ch. 30A ("Procedure Act"). (Docket Entry # 1, ¶¶ 50-52, 54-55). For DOC policies to carry the full force of law and be binding on the DOC, they "must be promulgated in accordance with the [Procedure Act]." <u>Dougan, et al. v. Commissioner of Correction, et al.</u>, 607 N.E.2d 763, 764 (Mass.App.Ct. 1993); see <u>Rasheed v. Commissioner of Correction</u>, 2003 WL 186640, at *3 (Mass.App.Ct.

---

[5] Plaintiff does not address his MCRA claim in his opposition memorandum. (Docket Entry # 19).

[6] See footnote one.

Jan. 28, 2003) (policies not promulgated pursuant to the Procedure Act do not have the force of law). The Commissioner has wide discretion in issuing rules and regulations under section one of Massachusetts General Laws chapter 124 and "internal guidelines for carrying out [an agency's] duties" not in compliance with the Procedure Act "do not have the legal force of a statute or regulation." Town of Northbridge v. Town of Natick, 474 N.E.2d 551, 556 (Mass. 1985) (internal citations omitted).[7]

DOC regulations, which plaintiff confuses with DOC policies for internal management, are promulgated under the Procedure Act, published in the Code of Massachusetts Regulations ("CMR"), and have statutory force. The policies plaintiff alleges defendants violated however are internal management policies, not promulgated regulations under the Procedure Act and not published in the CMR. As such, the policies do not have binding force on the DOC. Defendants therefore correctly submit that

---

[7] Under the Procedure Act, a "regulation" does not include:

> [A]dvisory rulings issued under section eight; or [] regulations concerning only the internal management or discipline of the adopting agency or any other agency, and not substantially affecting the rights of or the procedures available to the public or that portion of the public affected by the agency's activities.

Mass. Gen. L. ch. 30A, § 1(5).

14

the cited regulations are not subject to the Procedure Act and are therefore subject to dismissal.

In sum, counts I, II, III, V, VI and VII are subject to dismissal.  Defendants identify the IIED claim as well as plaintiff's allegations of violations of various laws in the supporting memorandum.  (Docket Entry # 18, p. 2).  They do not, however, raise an argument regarding the IIED claim.  Count IV therefore survives the motion to dismiss.

As to Count VIII, it refers *inter alia* to violations of plaintiff's rights under section 1985, section 1983, the Fourteenth Amendment and his state created liberty interest.  Having addressed these "claims" above, they are also subject to dismissal.  The remaining allegation in Count VIII of violations of "Retaliation Clauses," "Torts," the "Universal Declaration of Human Rights" and section 37 of Massachusetts General Laws chapter 265 remain in this action at this time inasmuch as defendants do not sufficiently raise an argument to dismiss them.

As a final matter, defendants seek to dismiss Vachon because the complaint does not allege any wrongdoing on his part.  The argument, which fails to cite any legal authority, reads as follows:

> Plaintiff has failed to allege any actionable claims against defendant Vachon.  The only allegations in the Complaint concerning defendant Vachon involve an alleged

15

> conversation between plaintiff and Vachon. See Complaint ¶¶ 11-18. Plaintiff alleges no wrong-doing by Vachon; there are no allegations of any constitutional violations by Vachon. Plaintiff's allegations concerning Vachon fail to state a claim upon which relief can be granted and therefore, should be dismissed.

(Docket Entry # 18, p. 9). A constitutional violation is not required for the remaining IIED claim. In addition, the IIED count repeats and incorporates all of the previous paragraphs in the complaint. Liberally reading the complaint and without a more specific argument with "citation of supporting authorit[y]," LR. 7.1(b)(1), Vachon remains as a defendant in this proceeding.

## CONCLUSION

Accordingly, this court **RECOMMENDS**[8] that defendants' motion to dismiss (Docket Entry # 17) be **ALLOWED** as to counts I, II, III, V, VI and VII and **DENIED** as to counts IV and VIII.

                                            /s/ Marianne B. Bowler
                                            **MARIANNE B. BOWLER**
                                            United States Magistrate Judge

---

[8] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. See Rule 72(b), Fed. R. Civ. P. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.